**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
**SOUTHERN DIVISION**

| | |
|---|---|
| JADYN NEWMAN, individually, and on behalf of classes of similarly situated individuals,<br><br>         Plaintiffs,<br>v.<br><br>AUDIENCEVIEW TICKETING CORPORATION AND UNIVERSITYTICKETS.COM, INC.,<br><br>         Defendants. | Case No 1:23-cv-03764-VEC |
| RICHARD Z. TOLEDO, individually, and on behalf of classes of similarly situated individuals,<br><br>         Plaintiffs,<br><br>v.<br><br>AUDIENCEVIEW TICKETING CORPORATION AND UNIVERSITYTICKETS.COM, INC.,<br><br>         Defendants. | Case No 1:23-cv-03764-VEC<br><br>CONSOLIDATED WITH 1:23 -CV-3764 |

**PLAINTIFFS' UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

31

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................. 1

I.  CASE SUMMARY ...................................................................................................... 2

    A.  The Data Incident ............................................................................................ 2

    B.  Plaintiff's Complaint ....................................................................................... 2

    C.  The Parties Settlement Negotiations and Mediation Efforts ..................... 3

II.  SUMMARY OF SETTLEMENT ............................................................................. 3

    A.  Settlement Benefits.......................................................................................... 3

        1.  Monetary Relief.................................................................................... 4

        2.  Data Security Measures...................................................................... 5

        3.  Release .................................................................................................. 5

    B.  The Notice and Claim Process ....................................................................... 6

        1.  Requests For Exclusion And Objections......................................... 7

    C.  Fees, Costs, and Service Awards ................................................................... 8

III.  LEGAL STANDARD ............................................................................................... 8

IV.  ARGUMENT ............................................................................................................. 9

    A.  The Proposed Class is Sufficiently Numerous. ........................................ 10

    B.  Questions of Law and Fact Are Common to the Class. ........................... 11

    C.  Plaintiffs' Claims and Defenses are Typical of the Class. ..................... 12

    D.  Plaintiffs Will Provide Fair and Adequate Representation of the Class. ........... 12

    E.  Because Common Issues Predominate Over Individualized Ones, Class Treatment is Superior. ...................................................................................13

    F.  The Terms of the Settlement are Fair, Reasonable, and Adequate...................... 15

        1.  The Settlement Warrants Preliminary Approval Under Rule 23(e). ....... 16

        2.  Consideration of the *Grinnell* Factors Favors Preliminary Approval...... 21

    G  The Proposed Claims Administrator Will Provide Adequate Notice.................. 23

V.  CONCLUSION ........................................................................................................ 24

### TABLE OF AUTHORITIES

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328, 338 (2d Cir. 2006) ................................................................. 34

*Alcantara v. CNA Mgmt., Inc.,*
    264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009) ...................................................... 11

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................... 10

*Baksh et al. v. IvyRehab Network, Inc.*
    No. 7:20-CV-01845 (S.D.N.Y.) ................................................................... 1

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................. 20

*Bolanos v. Norwegian Cruise Lines Ltd.,*
    212 F.R.D. 144 (S.D.N.Y. 2022) ................................................................. 12

*Bourlas v. Davis Law Assocs.*,
    237 F.R.D. 345 (E.D.N.Y. Aug. 30, 2006) .................................................. 15

*Charron v. Pinnacle Group N.Y. LLC,*
    874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) ............................................. 3 4

*Cohen v. J.P. Morgan Chase & Co.,*
    262 F.R.D. 153 (E.D.N.Y Sept. 24, 2009) ................................................... 8

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir.1995) ........................................................................... 11

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2007) .......................................................................... 17

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ........................................................................ 10

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................ 21

*Eastman Kodak Co.*,
    228 F.R.D. at 186 (*quoting In re Austrian*, 80 F. Supp. 2d).................... 22-23

*Fox v. Cheminova*,
    213 F.R.D. 113 (E.D.N.Y. Feb. 28, 2003) ................................................... 13

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060 (RMB)(RLE), 2010 WL 2643307 ................................... 19

*Hapka v. CareCentrix, Inc.*,
  Case No. 2:16-cv-02372, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) 14

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ...................................... 13

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................ 17

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,
  574 F.3d 29, 35 (2d Cir. 2009).................................................. 12

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................... 18

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013) .................................................... 20

*In re Heartland*,
  851 F. Supp. 2d ................................................................ 14

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. June 10, 2009) ........................................ 16

*In re Interpublic Sec. Litig.*,
  No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)................... 22

*In re Luxottica Group S.p.A. Sec. Litig.*,
  233 F.R.D. (E.D.N.Y. 2006) ...................................................... 9

*In re Nasdaq Antitrust Litig.*,
  176 F.R.D ..................................................................... . 15

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977)................................................... 34

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997)................................................. 22

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D. N.Y. Jan. 28, 2019) ....................................... 15

*In re Polaroid ERISA Litig.*,
  2007 WL 2116398 (S.D.N.Y. July 19, 2007)...................................... 20

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    Case No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .......... 14

*Jackson v. Bloomberg, L.P.*,
    298 F.R.D. 152 (S.D.N.Y. Mar. 19, 2014) ...................................................................... 11

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
    333 F.R.D. 314 (S.D.N.Y. 2019) ................................................................................. 21

*Lizondro-Garcia v. Kefi LLC*,
    300 F.R.D. 169 (S.D. N.Y. 2014) .................................................................................. 11

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir.1997) ........................................................................................... 10

*Rutledge et al v. Saint Francis Healthcare System*,
    No. 1:20- cv-00013-SPC (E.D. Mo.) .............................................................................. 18

*Strougo ex rel. BrazilianEquity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ........................................................................... 20

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ................................... 22

*Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir.2005) ............................................................................................ 23

*Willix v. Healthfirst, Inc.*,
    No. 07–cv–1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...................................... 17

## Federal Rules of Civil Procedure

Rule 23(c)(2)(B). .......................................................................................................... 23
Rule 23(e)(2)(c)(i)-(iv) ................................................................................................. 19
Rule 23(e) ..................................................................................................................... 34
Rule 23(e)(3) ................................................................................................................ 20
Rule 23(e)(2)(A)-(D) .................................................................................................... 15
Rule. 23(e)(2)(c) ........................................................................................................... 18
Rule 23(e)(2)(A) ........................................................................................................... 16
Rule 23(e)(2)(C)(i)-(iv) ................................................................................................ 15
Rule 23(e)(1)(i) ............................................................................................................ 15
Rule 23(a)(2) ................................................................................................................ 11
Rule 23(a)(1) ................................................................................................................ 10

## Other Authority

Manual for Complex Litigation, § 30.41 (3d ed. 1995) ............................................... 15

Plaintiffs Jadyn Newman and Richard Z. Toledo ("Plaintiffs") submits this Unopposed Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.[1]

## INTRODUCTION

This class action arises out of Audienceview Ticketing Corporation ("AudienceView") and Universitytickets.Com, Inc. ("UniversityTickets") (AudienceView and UniversityTickets, collectively "Defendants") alleged failure to safeguard the PII that it collected and maintained from Plaintiffs and the Class of approximately 13,045 individuals. Defendants deny all liability and wrongdoing.

After extensive arm's length negotiations, the parties have reached a settlement that is fair, adequate, and reasonable. In exchange for a narrowly tailored release, limited to claims that were based upon the specific facts alleged in this case, Defendants have agreed to pay up to $435,000 to compensate valid claims submitted by Class Members, any court-approved attorneys' fees, costs and expenses, and court-approved Service Awards to the Plaintiffs. Settlement Agreement, ("SA").[2] Plaintiffs strongly believe the settlement is favorable to the Settlement Class. See Declaration of Kiley L. Grombacher, ("Grombacher Decl." or "Decl.") ¶ 11.

Pursuant to Rule 23(e), Plaintiffs move the Court for an order certifying the class for settlement purposes, preliminarily approving the settlement agreement, and approving the content and manner of the proposed notice. Plaintiffs respectfully request that the Court preliminarily approve the Parties' Settlement Agreement.

---

[1] Counsel for Defendants have been apprised of the content of this Motion and have stated that the Motion is unopposed.

[2] The Settlement Agreement ("SA") in their entirety is attached as Exhibit 1 to the Declaration of Kiley L. Grombacher ("Grombacher Decl.") filed herewith. Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

## I.      CASE SUMMARY

### A.      The Data Incident

Defendants AudienceView Ticketing Corporation and UniversityTickets.com Inc. operate an online ticketing platform providing services across the United States. In the ordinary course of doing business, Defendants collect certain Personally Identifiable Information (PII) from customers such as: name, address, payment card information, billing and shipping addresses, transaction histories and email address. Grombacher Decl., ¶ 13.

Between February 14, 2023 and February 21, 2023, malicious actors infiltrated AudienceView's digital infrastructure. The malware bypassed existing security measures and involved potential access to PII from AudienceView's servers. As a result, Defendants notified approximately 13,045 current and past users of the AudienceView platform that their PII was potentially impacted by the Data Incident. Id., ¶ 15.

### B.      Plaintiff's Complaint

On May 4, 2023, Plaintiff Newman filed their complaint in this matter, and on June 30, 2023, Plaintiff Toledo filed his complaint, with parallel allegations. Following the consolidation of these two actions against Audience View Ticketing and University Tickets, Plaintiffs filed a consolidated class action complaint on August 10, 2023, amending on October 16, 2023. Plaintiffs alleges claims of negligence, unjust enrichment, breach of express contract, breach of implied contract, invasion of privacy, and deceptive business practices.

Plaintiffs seek an award of actual, nominal, consequently and punitive damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper. Further, by their complaint, Plaintiffs seek equitable relief enjoining Defendants from engaging in the wrongful conduct complained of and compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety. *Id.*, ¶x.  Defendants filed a motion to dismiss

the amended complaint on November 17, 2023, which was rendered moot upon the court staying the case on February 14, 2024, to enable the parties to pursue mediation.

### C.    The Parties Settlement Negotiations and Mediation Efforts

Following the filing of the motion to dismiss, the Parties, by and through their respective counsel, began discussing the possibility for early resolution. Grombacher Decl., ¶ 23. The Parties agreed that exploration of whether early resolution could be achieved was warranted. Over the next few months, the Parties engaged in extensive arm's length settlement negotiations. *Id.,* ¶ 26. Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. *Id.*, ¶ 27.

On May 28, 2024, the parties engaged in a full-day mediation session with the Honorable Morton Denlow, a well-respected industry leader in this field. The parties reached a settlement in principle at the mediation, and over the next few weeks, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. *Id.*, ¶ 28. The Settlement Agreement ("SA") was finalized by the Parties on August 23, 2024, and is attached in full as Exhibit 1 to the Declaration of Kiley L. Grombacher, filed herewith. It is the opinion of Plaintiffs and proposed settlement class counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Class. *Id.*, ¶ 31.

## II.    SUMMARY OF SETTLEMENT

### A.    Settlement Benefits

Under the proposed Settlement, Class Members shall have an opportunity to submit a claim for reimbursement of ordinary losses, lost-time, extraordinary losses, or an alternative cash payment of $75.[3] Furthermore, under the Settlement Agreement, Defendants have implemented certain

---

[3] Such payment is subject to *pro-rata* increase or decrease depending on claims rate but shall not exceed $225 per claimant.

cybersecurity enhancements. The Settlement provides for relief for a Class defined as: "persons who are identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by Defendants that their Payment Card Information was potentially compromised in the Data Incident." SA, ¶ 40.

The Class is estimated to include approximately 13,045 individuals. The Settlement Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id*.

### 1. Monetary Relief

Under the terms of the Settlement Agreement, Defendants will pay $435,000 into a Settlement Fund, which will be used to make payments to Class Members and to pay the costs of Notice, Settlement Administration, attorneys' fees and expenses, and Service Award to Plaintiff. SA., ¶ 47.

Settlement Class Members can submit a claim for Ordinary Losses, which provides for up to $5,000.00 per person reimbursement of documented ordinary losses, demonstrably incurred, more likely than not, as a result of the Data Incident, including, but not limited to: (i) unreimbursed fees or other charges from Class Members' bank or credit card company incurred as a result of the Data Incident; (ii) unreimbursed fees relating to Class Members' account being frozen or unavailable incurred as a result of the Data Incident; (iii) unreimbursed fees or other charges relating to the reissuance of Class Members' credit or debit card incurred as a result of the Data Incident; and (iv) other unreimbursed incidental telephone, internet, mileage, or postage expenses directly related to and incurred as a result of the Data Incident. SA, ¶ 54. Class Members can also submit a claim for

documented Extraordinary Losses which will provide reimbursement of up to $5,000.00 per person for actual, documented, and unreimbursed monetary loss incurred on or after October 12, 2022, more likely than not caused by the Data Breach, and not already covered by one or more of the normal reimbursement categories. *Id*., ¶ 53.

Additionally, Class Members can submit a claim for compensation for up to four (4) hours of lost time spent addressing issues related to the Data Incident, calculated at the rate of $25.00 per hour. SA, ¶56. To make a claim for lost time the Class Member must include an attestation that the time claimed was actually spent as a result of the Data Incident. *Id* ¶ 55.

Alternatively, Class Members can elect to receive an alternative cash payment in the amount of $75 subject to pro rata increase or decrease based upon claims rate.

### 2.    Data Security Measures

In addition to the monetary relief provided, Defendants have represented that they have either undertaken or will undertake certain reasonable steps to further secure their systems and environments. SA, ¶ 71. Defendants have agreed to provide further information to the Plaintiffs and Class Counsel, if requested, on a confidential and sealed basis regarding the already undertaken enhancements or planned future enhancements and the estimated value of those changes, provided that Plaintiffs,  with prior approval from the Court, may file such information regarding the undertaken or planned enhancement steps under seal with the Court in accordance with the orders and instructions of the Court. SA, Ex. 2.

### 3.    Release

The release is tailored to the claims that have been pleaded or could have been pleaded in this case. SA, ¶ 89. Class Members who do not exclude themselves from the Settlement Agreement will release all claims, whether known or unknown, against Released Persons, based on, relating to, concerning or arising out of the alleged Data Incident or the allegations, transactions, occurrences,

facts, or circumstances alleged in or otherwise described in the Litigation. *Id.* ¶ 11.

**B.    THE NOTICE AND CLAIM PROCESS**

    **1.    Notice**

The Parties agreed to use Eisner Advisory Group, LLC ("EAG" or "EisnerAmper") ("Settlement Administrator") as the Settlement Administrator Grombacher Decl. ¶ 36. The cost of notice and all other costs of Settlement Administration will be paid for out of the Settlement Fund. *Id.* ¶ 37. The notice plan provides for individual notice to Class Members via email and U.S. mail, to the postal address that Defendants have on record for each Class Member. *Id.* ¶ 38.

The Settlement Administrator will establish a settlement website and will maintain and update the website during the claim period, with the Long Notice, and Claim Form, the Preliminary Approval Order, Settlement Agreement, and other relevant case documents. Declaration of Ryan Aldridge ("Aldridge Decl.") at ¶ 10. Class Members will be able to submit Claim Forms through the website. *Id.* The Settlement Administrator will also make a toll-free help line during the claims period to provide Class Members with additional information about the Settlement and will establish a P.O. Box to which Class Members can submit claims. *Id.*, ¶ 11.

    **2.    Claims**

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. Grombacher Decl. ¶ 47. Class Members will have no less than sixty (60) days after the Short Notice is issued to complete and submit their Claim Form to the Settlement Administrator, either by mail or online. SA, ¶ 7. The Claim Form is written in plain language to facilitate Class Members' ease in completing it. Grombacher Decl. ¶ 43. The Settlement Administrator will be responsible for reviewing the Claim Forms and determine if they are complete and valid. *Id.* ¶ 44.  SA, Ex. 3 Should a claim be incomplete or lacking sufficient

documentation, the Settlement Administrator may reach out the claimant for supplementation. Grombacher Decl. ¶ 44.

### 3.    Requests For Exclusion And Objections

Settlement Class Members will have sixty (60) days following the Notice Commencement Date to object to or to submit a request for exclusion from the Settlement. SA, ¶ 7. Similar to the timing of the claims process, the timing with regard to objections and requests for exclusion is structured to give Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed fourteen (14) days prior to the deadline for Class Members to object or exclude themselves from the Settlement. *Id*., ¶ 7.3.

To be excluded from the Settlement, Class Members must make their request in writing, and must clearly manifest their intent to be excluded from the class. SA, ¶ 4.1. Any Member of the Class who elects to be excluded shall not (i) be bound by any order or the Judgment; (ii) be entitled to relief under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement Agreement. *Id*., ¶ 4.2.

Any Settlement Class Member who wishes to object shall file notice of his/her intention to do so with the Court and concurrently mail notice to Class Counsel, counsel for Defendants, and the Claims Administrator. SA, ¶ 77.  The objection to the Settlement Agreement must include: (i) the objector's full name and address; (ii) the case name and docket number; (iii) information identifying the objector as a Class Member, including proof that the objector is a member of the Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the objector believes he or she is a Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the

objection; (vi) a statement whether the objector and/or his or their counsel will appear at the Final Approval Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or their in connection with the objection. *Id.*

### C.    FEES, COSTS, AND SERVICE AWARDS

The Settlement Agreement calls for a reasonable service award to each of the two named Plaintiffs in the amount of $3,500, totaling $7,000. SA, ¶ 91. The Service Award is meant to compensate Plaintiffs for their efforts on behalf of the Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation during the settlement negotiations, reviewing the Settlement Agreement, and answering counsel's questions. Grombacher Decl., ¶ 51.

After agreeing to the terms of the settlement, counsel for Plaintiffs negotiated with Defendants regarding their attorneys' fees and costs. Any costs and fees awarded are to be paid out of the $435,000 cap as outlined in the Settlement Agreement. *Id.* ¶52.  Class Counsel will submit a separate motion seeking attorneys' fees, costs, expenses, and Plaintiffs' Service Award before filing the Motion for Final Approval, and before Class Members' deadline to exclude themselves from, or object to, the Settlement Agreement. *Id.*

## III.    LEGAL STANDARD

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff(s)—or the class—could hope to obtain. See *Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. 153, 157 (E.D.N.Y Sept. 24, 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy." (internal quotations omitted)).

"Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Under the current iteration of Rule 23(e), in weighing a grant of preliminary approval district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The Settlement Agreement here warrants preliminary approval so that persons in the Class can be notified of the Settlement and provided an opportunity to voice exclusion or objection.

## IV.    ARGUMENT

### A.    The Settlement Class Should be Preliminarily Certified

Plaintiffs here seeks to certify, for settlement purposes, a class defined as: "all natural persons residing in the United States who were sent a Notice Letter notifying them that their Private Information may have been compromised in the Data Incident." SA, ¶ 39. The Class is estimated to include approximately 13,045 individuals. *Id.*, Ex. 4. Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of those of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over questions affecting only individual members, and that a class action is superior to other available methods for adjudication of the controversy.

In determining whether to preliminarily approve a class action settlement, courts must first

determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of their Rule 23(e) fairness review").

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id*. Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*. In this Circuit, courts have found that "[i]n deciding certification, courts must take a liberal rather than restrictive approach in determining whether the Plaintiffs satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class." *Cohen*, 262 F.R.D. at 158, (internal quotations omitted); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.). Because the Class meets all requirements for certification under Rule 23, this Court should grant Plaintiffs' request.

### B.    THE PROPOSED CLASS IS SUFFICIENTLY NUMEROUS.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity

requirement, forty class members generally satisfies the numerosity requirement. *Alcantara v. CNA Mgmt., Inc.,* 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). Here, the Parties have identified approximately 13,045 individuals who are a part of the Class. Grombacher Decl., ¶ 35. The large number of persons in the Class clearly renders joinder impracticable. As such, the numerosity requirement is easily satisfied.

### C.    QUESTIONS OF LAW AND FACT ARE COMMON TO THE CLASS.

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high— commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D. N.Y. 2014) (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Plaintiffs may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.,* 126 F.3d at 377 (per curiam). "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014) (*quoting Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)). Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether Defendants failed to adequately safeguard the records of their customers who entrusted it with their information is a question common across the entire class. Defendants' security safeguards were common across the Class, and those applied to the data of one Class Member did not differ from those applied to another.

Other specific common issues include (but are not limited to): (a) Whether Defendants failed to implement reasonable security procedures and practices; and (b) Whether Defendants 's conduct

rose to the level of negligence. These common questions, and others alleged by Plaintiffs in their Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

### D. PLAINTIFFS' CLAIMS AND DEFENSES ARE TYPICAL OF THE CLASS.

Typicality Rule 23(a)(3) is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments[.]" *In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted). The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected[.]" *Marisol A.,* 126 F.3d at 376.

Here, Plaintiffs' and Class Members' claims stem from the same event—the Data Incident— and Defendants' cybersecurity protocols to protect Plaintiffs' and Class Members' data. Thus, Plaintiffs' claims are typical of the Class Members' claims and the typicality requirement is satisfied.

### E. PLAINTIFFS WILL PROVIDE FAIR AND ADEQUATE REPRESENTATION OF THE CLASS.

A representative Plaintiffs must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, Plaintiffs must establish that: (1) the there is no conflict of interest between the class representative and other members of the class; and (2) the Plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 156 (S.D.N.Y. 2022) (*quoting Marisol A.,* 126 F.3d at 378); *see also Amchem*, 521 U.S. at 624.

Here, Plaintiffs' interests are aligned with those of the Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Class Members' data was allegedly compromised

in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Class Members will all be eligible for monetary relief within the $435,000 cap on payments to be made by Defendants. Moreover, their data remaining with Defendants will be safeguarded in the future by the security protections they have or will put into place.

Further, counsel for Plaintiffs have decades of combined experience as class action litigators and are well suited to advocate on behalf of the class. See Grombacher Decl. ¶¶ 3-11. Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

### E.    BECAUSE COMMON ISSUES PREDOMINATE OVER INDIVIDUALIZED ONES, CLASS TREATMENT IS SUPERIOR.

To show that common issues predominate, Plaintiffs must demonstrate that common questions of law or fact relating to the class predominate over any individualized issues. *Bolanos*, 212 F.R.D. at 157. This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is met when the Defendants 's wrongful acts involve common practices, or when the Defendants have a common defense. *Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. Feb. 28, 2003) (*citing In re Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987)). Commonality is regularly met in cases where the focus is on the conduct of a Defendants rather than that of individual plaintiff, making it particularly susceptible to common, generalized proof. *Cohen*., 262 F.R.D. at 159.

In this case, the key predominating questions are whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Class, and whether Defendants breached that duty. The common questions that arise from Defendants conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018)

(finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the Defendants ] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the Defendants ] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.,* Case No. 2:16-cv-02372, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendants 's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, Case No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Because the class is being certified for settlement, there are no issues with manageability. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present … management problems[.]"). The resolution of 15,000 claims in one action is superior to individual lawsuits. Class certification—and class resolution—furthers judicial efficiency and conservation of resources by avoiding individually litigating thousands of individual data breach cases arising out of the same Data Incident.

The common questions of fact and law arising from Defendants 's conduct predominate over any individualized issues, a class action is the superior vehicle to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the classes should be certified for settlement.

**F.    THE TERMS OF THE SETTLEMENT ARE FAIR, REASONABLE, AND ADEQUATE**

After determining that certification of the Settlement Class is appropriate, the court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice. Under the current iteration of the Rule, notice is only justified where the parties can show that the court will "likely" be able to approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(i). Thus, consideration on preliminary approval requires an initial assessment of the factors to be considered on final approval: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief is adequate, Courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D. N.Y. Jan. 28, 2019); Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Second Circuit had developed their own list of factors for consideration, finding preliminary approval of a proposed class action settlement is warranted where it is the result of "serious, informed, non-collusive ("arm's length") negotiations, where there are no grounds to doubt their fairness and no other obvious deficiencies. . . and where the settlement appears to fall within the range of possible approval." *See Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102; *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 354 (E.D.N.Y. Aug. 30, 2006); *see also* Manual for Complex Litigation, § 30.41 (3d ed. 1995). In making this determination, Second Circuit Courts considered nine *Grinnell* factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the

15

stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the Defendants s to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009) (*citing City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds)).

In reviewing the Settlement for substantive fairness, reasonableness, and adequacy, Plaintiffs will examine the Settlement for satisfaction of both the Rule 23 factors, as well as the *Grinnell* factors historically considered by Second Circuit Courts in order to demonstrate that the Settlement falls well within the "range of possible approval," is "likely" to be granted final approval and warrants preliminary approval so that notice can issue to the class.

### 1.    The Settlement Warrants Preliminary Approval Under Rule 23(e).

#### a.    *Plaintiffs and Proposed Class Counsel have adequately represented the Class*

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes. Here, Plaintiffs has maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaint, remained available for consultation throughout settlement  negotiations, reviewed the Settlement Agreement, and answered counsel's many questions. Grombacher Decl., ¶ Plaintiffs does not have any conflicts with the proposed class and have adequately represented Settlement Class Members in the litigation.

Proposed Class Counsel has also adequately represented the class. As discussed *supra* at Section V.E, Co-Lead Counsel has extensive experience in class action litigation generally, and data

breach cases in particular. See Grombacher Decl., ¶ 3-11. In negotiating the Settlement, Co-Lead Counsel was thus well positioned and able to benefit from years of experience and familiarity with the factual and legal bases for this case.  Although formal discovery had not been completed, such discovery is not required for a settlement to be adequate. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) (finding "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Willix v. Healthfirst, Inc.*, No. 07–cv–1143, 2011 WL 754862 at  *4 (E.D.N.Y. Feb. 18, 2011). ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating" (internal quotations omitted)). "In fact, informal discovery designed to develop a settlement's factual predicate is encouraged because it expedites the negotiation process and limits costs which could potentially reduce the value of the settlement." *Castagna*, 2011 WL 2208614, at *6 (*citing Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 360 (S.D.N.Y.1982)) ("In view of the way this speeds the negotiation process, informal 'discovery' is to be encouraged").

Here, proposed Class Counsel carried out a thorough investigation of the claims, and settlement negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. Grombacher Decl. ¶¶ 16, 31. Accordingly, Plaintiffs and Class Counsel here have adequately represented the Class and this factor weighs in favor of preliminary approval.

### b.    The Settlement was negotiated at arms' length and is absent of any collusion.

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164,

17

1774 (S.D.N.Y. 2000); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).

Here, both Parties were represented by experienced counsel, and the settlement was only reached after months of arm's length negotiations. The court need look no further than the fact that the parties were unable to reach a mutually agreeable figure for the attorneys' fees to understand that the negotiations were both contentious and at arms' length. Thus, there is no evidence of collusion. Accordingly, this factor weighs in favor of preliminary approval.

### c.    *The relief provided for the class is more than adequate.*

Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The instant Settlement negotiated by Class Counsel on behalf of the class provides for significant relief. Valued at up to a total of $435,000, the Settlement provides for up to $5,000.00 per Class Member in monetary relief, including reimbursement of ordinary losses, out-of-pocket costs, and compensation for lost time, attorneys' fees and costs to the extent approved by the Court, and administration costs, up to the agreed $435,000 cap.  Additionally, Defendants have undertaken specific data security enhancements ensuring Plaintiffs' and Class Member's data is better protected in the future.

The Settlement terms are consistent with, and in fact better than, agreements in other similar data breach cases, in the Southern District of New York and across the country. *See e.g., Baksh et al. v. IvyRehab Network, Inc.* No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge et al v. Saint Francis Healthcare System*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and data security enhancements).

As the relief provided is well within the range of possible approval when considered in light of the Rule 23(e)(2)(c)(i)-(iv) factors, preliminary approval should be granted.

### i.    The costs, risks, and delay of trial and appeal are great.

The relief provided for by the Settlement Agreement is significant, especially in light of the costs, risks, and delay of further litigation. The Settlement Agreement guarantees Class Members the opportunity to make a claim for up to $5,000.00 each. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of the case, she also understands that Defendants will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiffs to the risk inherent in trying to achieve and maintain class certification and prove liability—both factors considered under the test for final approval established by *Grinnell*.

Moreover, due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met— and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).  Additionally, in this case, Defendants represented that they would seek to change the venue for this litigation from the United States to Canada, given that the company was headquartered there.

Plaintiffs dispute the defenses it anticipates Defendants will likely assert—but it is obvious that success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

19

### ii.    The proposed method of distributing relief, including the method of processing class-member claims, is objective, efficient, and fair.

As described in Section III.B, *supra*, the Settlement Administrator will assess claims and distribute relief. Grombacher Decl. ¶ 47. Class Members will have sixty (60) days from distribution of notice to complete and submit a claim form. *Id*. The Settlement Administrator will be responsible for evaluating the claims and the evidence submitted, requesting additional documentation and/or information where the claim form is insufficient, and awarding funds. *Id*. The procedure provided for by the Settlement Agreement is objective, efficient, and fair.

### iii.    The attorneys' fees, costs and service awards that Plaintiffs will request this Court approve are reasonable.

By separate motion, Plaintiffs will seek Court approval of attorneys' fees and costs in the maximum amount of thirty percent (30%) of the Settlement Fund, or One Hundred Thirty Thousand Five Hundred Dollars and Zero Cents ($130,500.00) to and a service award for Plaintiffs in the amount Three Thousand Five Hundred Dollars and Zero Cents ($3,500.00). These requests are well within the range of those regularly accepted by Second Circuit courts. *See Strougo ex rel. BrazilianEquity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (finding 33% in attorneys' fees alone to be reasonable)(collecting cases); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481- 83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to Plaintiffs); *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (granting award of $10,000 to named plaintiffs). While Plaintiffs will fully brief their request by separate motion prior to Class Members' deadline to object to or exclude themselves from the Settlement, the attorneys' fees, costs, and service awards sought clearly fall within the range of possible approval.

### iv.    No additional agreement related to the settlement exist.

No additional agreements require identification or examination under Rule 23(e)(3).

### d.    *The Settlement Treats Class Members Equitably to Each Other.*

Under the terms of the Settlement, the Class Members will be treated equitably to each other. Every Settlement Class Member can submit a claim for up to $5,000.00 in monetary compensation. Accordingly, and because the Settlement Agreement meets all of the required criteria under Rule 23 (e), preliminary approval should be granted.

### 2.    Consideration of the *Grinnell* Factors Favors Preliminary Approval.

Prior to the revisions to Rule 23, the Second Circuit relied on the nine factors set forth in *City of Detroit v. Grinnell Corp.* to guide their assessment of whether a class action settlement should be approved. *See* 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds). While preliminary approval requires only an initial evaluation and Rule 23 has been since amended, the factors remain instructive and have been used by Second Circuit courts in evaluating settlements even after 2018. *See Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019) (considering both the Rule 23 and *Grinnell* factors on motion for preliminary approval).

*First*, the complexity, expense, and likely duration of the litigation support preliminary approval. As discussed *supra*, at Section V(G)(1)(c)(i), continued litigation will be complex, long, and expensive. Plaintiffs would likely need to prevail on a motion to dismiss and/or summary judgment and both gain and maintain class certification through trial. Additionally, the amount of data expert analysis and testimony needed to bring this case to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter. Thus, this factor weighs in favor of approval.

*Second*, the reaction of class members is not yet apparent. While Plaintiffs have reviewed and approved the Settlement Agreement, other Class Members have not yet had the same opportunity. As such, this factor is appropriately examined after Notice has issued to the Class and Class Members have had the opportunity to make a claim, exclude themselves, or object to the Settlement.

*Third*, the stage of the proceedings and the amount of discovery completed supports settlement approval. While the case is early in litigation, the Parties' exchanged information sufficient to allow both Parties to assess the claims and defenses at issue. Early settlement where the Parties are adequately informed, is to be commended. *Castagna*, 2011 WL 2208614, at *6 (commending negotiating early settlement and avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted). As discussed above at Section V(B), the Parties had more than enough information to evaluate the claims and defenses at issue. As such, this factor favors approval.

*Fourth, Fifth, and Sixth*, the risks of establishing liability, damages, and maintaining a class through trial weigh in favor of Settlement Approval. Although Plaintiffs firmly believes in the merits of the case, litigating in such an evolving area of law involves significant risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id*. (*quoting In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation.") (*citing Frank v. Eastman Kodak Co.*, 228 F.R.D. at 185 (W.D.N.Y.2005)). While Plaintiffs remains confident in the strength of their claims, additional litigation leaves open the risk that she will be unable to establish liability, prove causation and damages, and gain and maintain certification through trial. Thus, these factors weigh in favor of Settlement approval.

*Seventh*, the ability of Defendants to withstand a greater judgment is not at issue here. Even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Eastman Kodak Co.*, 228 F.R.D. at 186 (*quoting In re Austrian*,

80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral.

*Eighth and Ninth*, the Settlement provides substantial relief to the Settlement Class, especially in light of all the risks of litigation. The Settlement provides Class Members an opportunity to receive up to $2,800 per person in monetary relief, subject to a $500,000 overall cap on payments to be made by Defendants, along with the benefit of data security measures implemented by Defendants. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. Again, while Plaintiffs strongly believes in the merits of this case, she also understands that Defendants will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open Plaintiffs up to the risks inherent in trying to achieve and maintain class certification and prove liability and damages. Through the Settlement, the Class Members gain significant benefits without facing further risk of receiving no relief at all.

The *Grinnell* factors favor approving the Settlement—and certainly at least support preliminary approval. As such, the Court should grant Plaintiffs' motion and allow notice to issue.

### G. THE PROPOSED CLAIMS ADMINISTRATOR WILL PROVIDE ADEQUATE NOTICE.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) permits notice to be sent by "U.S. Mail, electronic mail, or other appropriate means." The Notice Plan negotiated here is the best practicable. The Notice plan calls for Notice to issue via email or U.S. mail to the addresses Defendants have in their possession. Grombacher Decl., ¶ 44.

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113–14 (2d Cir.2005). There are no rigid rules for determining whether

a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice merely must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id*. at 114. Second Circuit Courts have explained that a Rule 23 Notice will satisfy due process where it describes the terms of the settlement generally and informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006). The substance of the Notice here is designed to be clear and concise and inform Class Members of the general terms of the Settlement, the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. See SA, Exs. A-C. As such, the proposed Notice Plan should be approved.

## V.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Class Members significant relief. The Settlement Agreement is well within the range of reasonable results, and an initial assessment of both Rule 23 and the *Grinnell* factors demonstrates that final approval is likely, and Notice should be issued to the class. For these and the above reasons, Plaintiffs respectfully request this Court certify the class for settlement purposes and grant their Motion for Preliminary Approval of Class Action Settlement.

/ / /

/ / /

Date: August 23, 2024                    Respectfully submitted,

By:    */s/ Kiley l. Grombacher*
       Kiley L. Grombacher
       **BRADLEY/GROMBACHER LLP**
       31365 Oak Crest Dr., Suite 240
       Westlake Village, CA 91361
       Telephone: 805-270-7100
       mbradley@bradleygrombacher.com
       kgrombacher@bradleygrombacher.com

       *Attorneys for Plaintiff and the Putative Class*