UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JADYN NEWMAN, individually and on behalf of classes of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>AUDIENCEVIEW TICKETING CORPORATION and UNIVERSITYTICKETS.COM, INC.,<br><br>Defendant. | Case No.: 1:23-cv-03764-VEC<br><br>**DECLARATION OF RYAN ALDRIDGE REGARDING PROPOSED NOTICE PLAN AND ADMINISTRATION** |
| RICHARD Z. TOLEDO, individually and on behalf of classes of similary situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>AUDIENCEVIEW TICKETING CORPORATION and UNIVERSITYTICKETS.COM, INC.,<br><br>Defendant. | |

I, Ryan Aldridge, hereby declare and state as follows:

1. I am a Project Manager for the proposed Settlement Administrator, Eisner Advisory Group, LLC ("EAG" or "EisnerAmper"),[1] a full-service administration firm providing legal administration services, including the design, development, and implementation of unbiased complex legal notification programs. We were asked by Counsel to review and execute the proposed Notice Plan in the above-referenced matter (the "Action").[2] The

---

[1] As of May 21, 2023, the directors & employees of Postlethwaite & Netterville, APAC ("P&N") joined EisnerAmper as EAG Gulf Coast, LLC. Where P&N is named as an entity, EAG Gulf Coast, LLC employees will service work contracted with P&N.

[2] All capitalized terms not otherwise defined in this document shall have the meaning ascribed to them in the Settlement Agreement.

1

following statements are based on my personal knowledge as well as information provided by other experienced employees working under my supervision.

2. We have undertaken the creation and execution of notice plans, along with the administration of diverse class action and mass action settlements. Our expertise extends across a wide array of subject matters, encompassing but not limited to privacy, products liability, consumer rights, mass tort, antitrust, insurance, and healthcare. The accomplished members of our team possess extensive experience in the design and implementation of notice procedures involving various aspects of class certification and settlement programs.

3. EisnerAmper and all applicable subsidiaries maintain their network environment with a managed data center provider with locations exclusively in the U.S. The environment is protected at the perimeter with next-generation firewalls, DMZ, and 24/7 Intrusion Detection & Prevention services. System patching and vulnerability remediation are fully automated. User access rights are assigned under the Principle of Least Privilege with enforcement via zero trust micro-segmentation, strict group access permissions, and disabled local administrator rights. All remote connections require multifactor authentication. All internal data is encrypted using TLS 1.3 in transit, and AES256 or higher at rest. The Technology and Human Resources teams maintain a direct connection between the network access management system and HR system, so user provisioning/deprovisioning for new hires and terminations is automatic. All users receive mandatory Information Security and Social Engineering training on an annual basis.

**OVERVIEW**

4. Based on our review of the Settlement Agreement, the Settlement Class is defined as follows:

> The Settlement Class is defined as all individuals who were sent notification by Audienceview Ticketing Corporation that their payment card information was or may have been compromised in the Data Incident.

Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) Defendants, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. The Class consists of 13,045 whose Payment Card information was potentially compromised.

5.     This Declaration will describe the Notice Plan ("Notice Plan") proposed in this Action, which includes direct notice and has been designed using methods accepted by the courts.

## PROPOSED NOTICE PLAN

6.     Class Counsel has informed us that the estimated total size of the Settlement Class is approximately 13,045 individuals. In order to obtain the pertinent contact details of Class Members, it has been communicated that upon preliminary approval of the Settlement Agreement, Defendant will produce a list of all records comprising of, to the extent available, the names, addresses, and email addresses for each Settlement Class Member (the "Class Notice List"). The Class Notice List will be reviewed for duplicates and other possible discrepancies.

7.     Following the review of the Class Notice List, the proposed Notice Plan provides that individual notice be sent via email ("Email Notice") and Postcard Notice (defined below) be mailed to all addresses.

**Direct Notice**

8.     Email Notice will be sent to all known Settlement Class Members for whom a facially valid email address has been provided by Defendant. The Email Notice, in substantially similar form to the Short Form Notice attached as Exhibit 1 of the Settlement Agreement, will be created using embedded html text format to provide an easy-to-read format without tables, graphs or other content that may increase the likelihood of the email landing in SPAM folders and/or being blocked by Internet Service Providers ("ISP" or "ISPs"). Additionally, EAG diligently follows email best practices including "unsubscribe" links, Administrator contact information, and maintaining multiple IP addresses with strong sender reputations.[3]

9.     Prior to sending, emails are put through a hygiene and verification process to protect the integrity of the email campaign and maximize deliverability. Steps include deduplication, syntax validation, misspelled domain detection and correction, domain validation, and risk validation. Emails that pass the hygiene and

---

[3] ISP's assign scores, or sender reputation, to domains and IP addresses which tells email inbox providers if the email should be delivered to the recipient's inbox or directed to the spam folder. The sender reputation is determined by multiple factors such as: the timing and number of emails sent from the IP/domain; number of recipients that have marked incoming mail from the sender as spam; number of emails that are delivered directly to spam boxes; number of emails that bounce back; number of recipients that interact with the email (e.g. open, reply, forward or delete); quality of the content within the email (e.g. typos); the number of users that unsubscribe; and many other factors.

verification process will be batched into small groups to decrease the likelihood of them being erroneously flagged as bulk junk email. EAG will track and report to the court all email delivery attempts. If an item is returned as undeliverable, commonly referred to as a "bounce," the reason is noted. If the email address is noted as non-existent as attempted, this is referred to as a "hard bounce," and no additional attempts to deliver the Email Notice to that email address will be made. Responses where the inbox is full, the attempt is initially blocked or deferred by the ISP, or any other circumstances that prevent delivery are referred to as "soft" bounces. To limit the number of undelivered emails as a result of soft bounces, EAG will continue to attempt to re-send to emails receiving a soft-bounce for a period of 72-hours. If the email is not able to be delivered after 72-hours, the email will be deemed undeliverable and no additional attempts will be made to that email address.

10.    In instances where a mailing address is available, EAG will cause the Short Form Notice to be mailed by United States Postal Service ("USPS") First Class Mail. The Short Form Notice will be in the form of a postcard ("Postcard Notice") substantially in the same form as Exhibit 1 to the Settlement Agreement. Prior to initiating the Postcard Notice, EAG will run the mailing addresses through the National Change of Address ("NCOA") database maintained by the USPS to ensure Settlement Class Member address information is up-to-date and accurately formatted for mailing.[4] In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and will be verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. Should NCOA provide a more current mailing address for a Settlement Class Member, EAG will update the address accordingly. If a Postcard Notice is returned with forwarding address information, EAG will re-mail to the forwarded address. For all Postcard Notices that are returned as undeliverable, EAG will use standard skip-tracing to obtain forwarding address information and, if skip-tracing provides a different mailing address, EAG will re-mail the Postcard Notice to the address identified by the skip-trace.

---

[4] The NOCA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery point coded addresses, for matches made to the NCOA file for individual, family, and business moves.

**Settlement Website**

11. EAG will create and maintain a website, www.AudienceviewDataSettlement.com, dedicated to this Settlement ("Settlement Website"). The Settlement Website address will be prominently included in Short and Long Form Notices (collectively, the "Notices"). The Notices, along with other relevant documents such as the Settlement Agreement and the Preliminary Approval Order, will be posted on the Settlement Website for Class Members to review and download. The Settlement Website will also provide the ability to file claims electronically, and will include relevant dates, answers to frequently asked questions, instructions for how Class Members may opt-out (request exclusion) from or object to the Settlement Agreement, contact information for the Settlement Administrator, and other case-related information.

**Dedicated Toll-Free Hotline**

12. A dedicated toll-free informational hotline will be available 24 hours per day, seven days per week. The hotline will utilize an interactive voice response ("IVR") system where Class Members can obtain essential information regarding the Settlement and be provided responses to frequently asked questions. Class Members will also have the option to leave a voicemail and receive a call back from the Settlement Administrator.

**Requests for Exclusion**

13. Class Members that want to exclude themselves from the Class may submit a request for exclusion by mail to a dedicated Post Office Box ("PO Box") that we will maintain. We will monitor all mail delivered to that PO Box and will track all exclusion requests received, which will be provided to the Parties.

## NOTICE AND ADMINISTRATION COSTS

14. We estimate $60,000 in fees and costs to implement the proposed Notice Plan and administer the settlement, including $6,000 in postage costs.

## CONCLUSION

15. The proposed Notice Plan encompasses individualized direct notice to all members of the Class who can be identified through reasonable efforts.

16. It is my opinion, based on my expertise and experience and that of my team, that this method of focused notice dissemination provides effective notice in this Action, will provide the best notice that is practicable, adheres to Fed. R. Civ. P. 23, follows the guidance set forth in the Manual for Complex Litigation

4th Ed. and FJC guidance, and exceeds the requirements of due process, including its "desire to actually inform" requirement.[5]

## CERTIFICATION

I, Ryan Aldridge, declare under the penalty of perjury that the foregoing is true and correct. Executed on this 23rd day of August, 2024, in Baton Rouge, Louisiana.

_____
Ryan Aldridge

---

[5] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).