# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JADYN NEWMAN, individually, and on behalf of classes of similarly situated individuals,<br><br>　　　Plaintiffs,<br><br>v.<br><br>AUDIENCEVIEW TICKETING CORPORATION AND UNIVERSITYTICKETS.COM, INC.,<br><br>　　　Defendants. | Case No 1:23-cv-03764-VEC |
| RICHARD Z. TOLEDO, individually, and on behalf of classes of similarly situated individuals,<br><br>　　　Plaintiffs,<br><br>v.<br><br>AUDIENCEVIEW TICKETING CORPORATION AND UNIVERSITYTICKETS.COM, INC.,<br><br>　　　Defendants. | Case No 1:23-cv-03764-VEC<br><br>CONSOLIDATED WITH 1:23-CV-03764-VEC |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND AWARD
OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD**

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF THE LITIGATION ........................................................................... 1

A.  Factual Background .......................................................................... 1

B.  Procedural History ........................................................................... 2

   1.  Litigation History ..................................................................... 2

   2.  Settlement Negotiations ............................................................ 3

   3.  Summary of the Settlement Agreement ..................................... 3

   4.  Notice and Administration ........................................................ 6

   5.  Settlement Class Members' Favorable Response to the Settlement ........................... 10

ARGUMENT ........................................................................................................ 10

A.  The Court Should Grant Final Approval of the Settlement .............................. 10

   1.  The Proposed Settlement Is Fair, Reasonable, and Adequate
       Pursuant to the Rule 23(e) and Second Circuit Factors ................................ 10

   2.  Rule 23(e)(2)(A): Plaintiffs And Counsel
       Adequately Represented The Settlement Class ......................................... 11

   3.  Rule 23(e)(2)(B): The Settlement Is The Result Of Arm's-Length Negotiations ......... 13

   4.  Rule 23(e)(2)(C): The Settlement Is An Excellent Result In Light
       Of The Benefits Of The Settlement And The Risks Of Continued Litigation ........... 14

   5.  The Settlement Treats Class Members Equitably Relative to Each Other .................. 19

   6.  The Ability of the Defendant to Withstand a Greater Judgment ......................... 20

   7.  Recovery Under the Settlement Is Within a Reasonable Range in Light of the
       Best Possible Recovery and All the Attendant Risks of Litigation ..................... 20

2.    The Court Should Certify the Settlement Class for Purposes of Judgment ...................... 22

CONCLUSION ................................................................................................................... 22

<u>**TABLE OF AUTHORITIES**</u>

**Page**

<u>**Statutes and Rules**</u>

Fed. R. Civ. P. Rule 23 ................................................................ *passim*

Fed. R. Civ. P. Rule 12(b)(6) ........................................................ 16

Fed. R. Civ. P. Rule 56 ................................................................. 16

<u>**Cases**</u>

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ...................................................... 12

*Baksh et al. v. IvyRehab Network, Inc.*,
    No. 7:20-CV-01845 (S.D.N.Y.) ................................................ 14

*Beach v. JPMorgan Chase Bank, N.A.*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) .............................. 11

*Bostick v. Herbalife Int'l of Am., Inc.*,
    2015 WL 12731932 (C.D. Cal. May 14, 2015) ........................... 8

*Broomfield v. Craft Brew Alliance, Inc.*,
    2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ............................... 8

*Castagna v. Madison Square Garden, L.P.*,
    2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011) .............................. 13

*Charron v. Pinnacle Group N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ...................................... 21

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448, 463 (2d Cir. 1974) ............................................. 11

*Cohen v. J.P. Morgan Chase & Co.*,
    262 F.R.D. 153 (E.D.N.Y. 2009) ............................................. 15

*Cottle v. Plaid I*nc.,
    340 F.R.D. 356 (N.D. Cal. 2021) .............................................. 8

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ................................................ 13, 14

*Flores v. CGI Inc.*,
    22-cv-350, 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ...................................... 14

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................ 20

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................................. 19

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..................................................... 16

*Hesse v. Godiva Chocolatier*,
    2022 WL 22895466 (S.D.N.Y. Apr. 20, 2022) ...................................................... 8

*Huang v. Spector*,
    142 S. Ct. 431 (2021) ......................................................................................... 16

*Hyand v. Navient Corp.*,
    48 F.4th 110 (2d Cir. 2022) .................................................................................. 9

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) .......................................................................... 8

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................... 12, 16

*In re Equifax Inc. Customer Data Security Breach Litig.*,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ....................................................... 16

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018),
    *aff'd*, 822 F. App'x 40 (2d Cir. 2020) ................................................................ 21

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 13

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................. 12, 15, 17, 20

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 2
    93 F.R.D. 21 (D. Me. 2013) ................................................................................ 17

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................................... 15

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................ 17

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 Fed. Appx. 760 (2d Cir. 2020) ................................................................11, 12

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ..........................................................................11

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  892 F.3d 968 (8th Cir. 2018) ............................................................................. 21

*Jones v. Singing River Health Servs. Found.*,
  865 F.3d 285 (5th Cir. 2017) ............................................................................. 14

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................... 22

*McMorris v. Carlos Lopez & Assoc.*,
  995 F.3d 295 (2d Cir. 2021) .............................................................................. 16

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................... 14

*Moses v. New York Times Co.*,
  79 F.4th 235 (2d Cir. 2023) .............................................................................. 14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ........................................................................................... 17

*Rutledge et al v. Saint Francis Healthcare System*,
  No. 1:20- cv-00013-SPC (E.D. Mo.) .................................................................. 15

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) ......................................................................... 8

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ............................................................................. 8

*Toretto v. Donnelley Fin. Solutions, Inc.*,
  2022 WL 348412 (S.D.N.Y. Feb. 2, 2022) .................................................. 16, 20

*Velez v. Majik Cleaning Serv., Inc.*,
  2007 WL 7232783 (S.D.N.Y. June 25, 2007) ................................................... 17

v

*Viafara v. MCIZ Corp.*,
    2014 WL 1777438 (S.D.N.Y. May 1, 2014) ............................................................ 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..................................................................... 12, 22

*Watkins v. Spector*,
    142 S. Ct. 765 (U.S. Jan. 10, 2022) ............................................................... 16

*Willix v. Healthfirst, Inc.*,
    2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ....................................................... 13

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) .............................................................. 14

Plaintiffs Jadyn Newman and Richard Z. Toledo ("Plaintiffs"), individually and on behalf of all similarly situated individuals, request that the Court grant final approval of the proposed class settlement (the "Settlement") reached in this action arising from the February 2023 data breach experienced by Defendant AudienceView Ticketing Corporation ("AudienceView") and UniversityTickets.com (collectively "Defendants"). This Settlement totals $435,000 plus additional non-monetary improvements to AudienceView's system security. On September 20, 2024, Plaintiffs' filed their Motion for Preliminary Approval of Class Action Settlement. Dkt. 69. On October 31,2024, the Court granted the motion, finding that it would preliminarily approve the Settlement, it would certify the Settlement Class, and direct that notice be issued to the Class. Preliminary Approval Order. Dkt. 74.

Pursuant to the Court's direction, the appointed claims administrator initiated the notice program on November 27, 2024, which was sent to over 13,000 class members by regular mail and/or email, resulting in a 99.37% reach rate. In response, 578 individuals have submitted valid claims. There are no objectors to the Settlement, and only two individuals in the Settlement Class have sought to exclude themselves.

Plaintiffs ask this Court to (1) grant final approval of the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); and (2) enter final judgment after the Final Approval Hearing.

**SUMMARY OF THE LITIGATION**

A.    **Factual Background**

Defendants operate online ticketing platform providing services across the United States. In the ordinary course of doing business, Defendants collect certain payment card information ("PCI") from customers such as: name, address, payment card information, billing and shipping addresses, transaction histories and email address. Declaration of Brian P. Murray ("Murray

1

Decl."), at ¶ 3, submitted herewith.

Between February 14, 2023 and February 21, 2023, malicious actors infiltrated AudienceView's digital infrastructure (the "Data Incident"). The malware bypassed existing security measures and involved potential access to PCI from AudienceView's servers. As a result, Defendants notified 13,045 current and past users of the AudienceView platform that their PCI was potentially impacted by the Data Incident. *Id*. at ¶ 4.

### B.    Procedural History

#### 1.    Litigation History

On May 4, 2023, Plaintiff Newman filed her complaint in this matter, and on June 30, 2023, Plaintiff Toledo filed his complaint, with parallel allegations. Following the consolidation of these two actions against Defendants, Plaintiffs filed a consolidated class action complaint on August 10, 2023 (Dkt. 31), amending on October 16, 2023 (Dkt. 38). Plaintiffs allege claims of negligence, unjust enrichment, breach of express contract, breach of implied contract, invasion of privacy, and deceptive business practices.

Plaintiffs sought an award of actual, nominal, consequential, and punitive damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper. Further, by their complaint, Plaintiffs sought equitable relief enjoining Defendants from engaging in the wrongful conduct complained of and compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety. Murray Decl. ¶ 6. Defendants filed a motion to dismiss the amended complaint on November 17, 2023 (Dkt. 45), which was rendered moot upon the court staying the case on February 14, 2024 (Dkt. 52), to enable the parties to pursue mediation.

## 2.  Settlement Negotiations

Following the filing of the motion to dismiss, the Parties, by and through their respective counsel ("Lead Counsel"), began discussing the possibility of early resolution. Murray Decl. at ¶ 7. The Parties agreed that exploration of whether early resolution could be achieved was warranted. Over the next few months, the Parties engaged in extensive arm's-length settlement negotiations. *Id.* Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. *Id.*

On May 28, 2024, the parties engaged in a full-day mediation session with the Honorable Morton Denlow, a well-respected industry leader in this field. The parties reached a settlement in principle at the mediation, and over the next few weeks, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. Murray Decl. at ¶ 8.

It is the opinion of Plaintiffs and Lead Counsel, based on their experience and investigation, that the Settlement, as set forth in the Settlement Agreement and Release, dated August 23, 2024 (Dkt. 63-1) ("Settlement Agreement" or "SA") presents a favorable result for the Class. Murray Decl. at ¶ 15.

## 3.  Summary of the Settlement Agreement

### a. Monetary Relief

Under the terms of the Settlement Agreement, Defendants will pay $435,000 into a Settlement Fund, which will be used to make payments to Class Members and to pay the costs of Notice, Settlement Administration, attorneys' fees and expenses, and Service Awards to Plaintiffs. SA. at ¶¶ 47, 51.

Settlement Class Members can submit a claim for Out-of-Pocket Losses, which provides

for up to $5,000.00 per person reimbursement of documented out-of-pocket losses, demonstrably incurred, more likely than not, as a result of the Data Incident, including, but not limited to: "(i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, or other possible misuse of class member's Payment Card Information; and/or (ii) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges." *Id*. at ¶ 53.

Additionally, Class Members can submit a claim for compensation for up to four (4) hours of lost time spent addressing issues related to the Data Incident, calculated at the rate of $75.00 per each full hour of time spent. SA at ¶ 55. To make a claim for Attested Time the Class Member must include an attestation that the time claimed was actually spent as a result of the Data Incident. *Id.*

Alternatively, Class Members can elect to receive an alternative cash payment in the amount of $75 subject to *pro rata* increase or decrease based upon the claims rate. *Id*. at ¶ 58. Given the nature of information potentially impacted in the Incident, which included PCI and not other personal identifiable information such as Social Security numbers or driver's license numbers, the parties agreed that there was no need to offer credit monitoring as part of the settlement terms. Murray Decl. at ¶ 9.

Depending on participation rates, "each Settlement Class Member who is entitled to receive payment for an Approved Claim for Attested Time and Approved Claim for Alternative Cash Payment shall receive funds increased on a *pro rata* basis" up to three times the value of their claim. SA at ¶ 58.

### b. Data Security Measures

In addition to the monetary relief provided, Defendants have represented that they have either undertaken certain reasonable steps to further secure their systems and environments. SA at ¶ 70; Murray Decl. at ¶ 12. Defendants provided further information to Lead Counsel regarding the facts and circumstances of the Data Incident, Defendants' responses thereto, and the changes and improvements that have been made to protect Settlement Class Members' information from further unlawful intrusions. Such changes and improvements that have been made or will be made include but are not limited to: removal of malicious JavaScript code from affected databases, implementation of trigger to identify reinsertion of malicious scripts into databases, disabling of SQL SA accounts, enabling blocking of SQL injection attempts at Cloudfare WAF, implementing an EDR solution and archiving the impacted infrastructure, and engaging a third-party forensics firm to assist in the internal investigation. *Id*. The costs of these measures was approximately $1.5 million. *Id*.

### c. Releases

The releases are tailored to the claims that have been pleaded or could have been pleaded in this case. SA, ¶¶ 88-90. Class Members who do not exclude themselves from the Settlement Agreement will release all claims, whether known or unknown, against Released Persons, based on, relating to, concerning or arising out of the alleged Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation. I., SA, ¶ 31.

### 4.   Notice and Administration

The Parties agreed to use Eisner Advisory Group, LLC ("EisnerAmper") as the Settlement Administrator. Murray Decl. at ¶ 8. The cost of notice and all other costs of Settlement Administration will be paid by the Settlement Fund. SA at ¶ 35. The Administrator agreed that the cost of administration will not exceed $60,000. Declaration of Ryan Aldridge (Dkt. 72) at ¶ 14. The notice plan provided for individual notice to Class Members via email and U.S. mail, to the postal address that Defendants have on record for each Class Member. *Id*. at ¶ 37.

### a.      Receipt of Class Member Information

EisnerAmper received the class data on November 11, 2024, in three Excel files with a total of 13,157 records. Declaration of Kevin Balhoff ("Balhoff Decl.") at ¶ 7, submitted herewith. After deduplicating the data, EisnerAmper determined that the Settlement Class Member population consists of 13,155 unique records. *Id.* Of the 13,155 records, 13,021 had an address sufficient to attempt mailing and 12,610 contained an email address. *Id.*

### b.      Email Notice

Beginning on November 27, 2024, EisnerAmper caused the Short-Form Notice to be sent via email ("Email Notice") to the 12,610 email addresses on the Class Notice List. Ultimately, the Email Notice was successfully delivered to 12,549 email addresses. Balhoff Decl. at ¶ 8.

### c.      Mail Notice

EisnerAmper coordinated and caused the Short Form Notice in the form of a postcard to be mailed via First-Class Mail ("Postcard Notice") to Settlement Class Members for which a mailing address was available from the class data. The Postcard Notice included (a) the web address to the case website for access to submit a claim and provide additional information, (b) rights and options as a Settlement Class Member and the dates by which to act on those

options, and (c) the date of the Final Approval Hearing. The Notice mailing commenced on or before November 27, 2024, in accordance with the Preliminary Approval Order. Balhoff Decl. at ¶ 9.

### d.    Website, Phone, And Email

On November 27, 2024, EisnerAmper published the Settlement Website, www.AudienceviewDataSettlement.com. Visitors to the Settlement Website can download the Long Form Notice (English & Spanish), the Claim Form, as well as Court Documents, such as the Class Action Complaint, the Settlement Agreement, the Preliminary Approval Order, Orders of the Court, and other relevant documents. Visitors were also able to submit claims electronically, find answers to frequently asked questions (FAQs), important dates and deadlines, and contact information for the Settlement Administrator. As of March 26, 2025, the Settlement Website received 4,594 unique visits. Balhoff Decl. at ¶ 12. Similarly, on November 27, 2024, EisnerAmper established a dedicated toll-free telephone number, which is available twenty-four hours per day throughout the Settlement Program. *Id*. at ¶ 13. Finally, EisnerAmper established an Email address, info@AudienceviewDataSettlement.com, to provide an additional option for Settlement Class Members to address specific questions and requests to the Settlement Administrator for support. *Id*. at ¶ 14.

### e.    Notice Reach

Through the Notice procedures outlined above, EisnerAmper attempted to send direct notice to 13,149 (99.95%) Settlement Class Members for which a mail or email address were available. As of March 26, 2025, the Notice Program reached a total of 13,073 (99.37%) of Settlement Class Members. *Id*. at ¶ 15.

### f.    Approved Claims

The online claim submission feature was available beginning November 27, 2024. As of March 26, 2025, EisnerAmper has received a total of 893 claims submissions, of which 578 claims have been determined to be non-duplicative and from Settlement Class Members. *Id*. at ¶ 16. The claims rate of 4.4% (580/13,073) is in line with, and indeed well above the claims rates in other data breach class action settlements that courts have approved. *Hesse v. Godiva Chocolatier*, 2022 WL 22895466, at *9 (S.D.N.Y. Apr. 20, 2022) (claims rate of 2.83%); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (granting final approval with 1.8% claims rate); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (granting final approval with 0.83% claims rate, stating that the rate was "on par with other consumer cases, and d[id] not otherwise weigh against approval"); *Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving settlement with response rate of "about two percent"); *Bostick v. Herbalife Int'l of Am., Inc.*, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) (approving settlement with "response rate of less than 1%")); *see Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) ("Settlements of large class action suits have been approved even where less than five percent of the class files claims."); *see also Cottle v. Plaid I*nc., 340 F.R.D. 356, 374 (N.D. Cal. 2021) (treating favorably a settlement administrator's estimate that a claims rate would be "between 1% and 4% of the proposed class of 98 million individuals").

Specifically, the approved claims have been allocated as follows:

| Table 3: Fund Summary | |
|---|---|
| **Description** | **Amount ($)** |
| **Total Fund Size** | **$435,000.00** |
| (-) Requested Attorneys' Fees and Expenses | $130,500.00 |
| (-) Service Awards | $7,000.00 |
| (-) Administration Costs | $54,450.86 |
| **(=) Net Settlement Fund** | **$243,049.14** |
| Dollars Recommended for Payment (Includes Max Pro Rata Increase) | $138,821.09 |
| Dollars Left Over for Cy Pres | $104,228.05 |

The Approved Claimants "shall receive funds increased on a *pro rata* basis (in other words, the same additional amount is added to each Settlement Class Member's payment as set forth herein) so that the Net Settlement Fund is depleted." SA ¶ at 68. However, "under no circumstances shall a Settlement Class Member receive more than three (3) times the value of his, her, or its Approved Claim for Attested Time or Approved Claim for Alternative Cash Payment." *Id*. Accordingly, because the monies to the Approved Claimants at this time total $138,821.09, there will likely be unclaimed funds in the Net Settlement Fund. In this circumstance, the "remaining monies shall be distributed as required by state law or to the Non-Profit Residual Recipient." SA ¶ at 69. These remaining monies currently total $104,228.05.

Plaintiffs' Counsel has designated the St. John's University School of Law Consumer justice for the Elderly Litigation Clinic. This Clinic is an in-house one-semester civil litigation and advocacy clinic. Under the supervision of the full-time clinical faculty members, students represent low-income elderly Queens residents in cases involving deed theft (where a person's home is taken through fraudulent deed transactions, caused by, *inter alia*, identify theft), foreclosure defense, predatory lending, home improvement contractor fraud, debt collection, and other consumer matters. Murray Decl. at ¶ 13. Thus, the St. John's University School of Law Consumer justice for the Elderly Litigation Clinic has a "direct and substantial nexus" to the interests of the class and the nature of this Action. *See Hyand v. Navient Corp.,* 48 F.4th 110, 121-22 (2d Cir. 2022).

### 5. Settlement Class Members' Favorable Response to the Settlement

The Settlement Class Members' response to the Settlement Agreement has been favorable. Only two Class Members have opted out of the Settlement, and there have been no objections. Balhoff Decl. at ¶¶ 17-18. The deadline to file a claim was February 26, 2025, and EisnerAmper has received 578 valid claims, totaling $138,821.09. *Id*. at ¶ 16. EisnerAmper is currently conducting a review and audit of all claims made, which may impact the final totals. *Id*.

## ARGUMENT

### A. The Court Should Grant Final Approval of the Settlement

#### 1. The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant to the Rule 23(e) and Second Circuit Factors

Rule 23(e) provides that the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

> (A)    have the class representatives and class counsel adequately represented the class;
> (B)    was the proposal negotiated at arm's length;
> (C)    is the relief provided for the class adequate, taking into account:
>> (i)    the costs, risks, and delay of trial and appeal;
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
> (D)    does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, 919); *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors"). The Second Circuit's *Grinnell* factors (certain of which overlap with Rule 23(e)(2)) are, therefore, still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*). As set forth below, the proposed Settlement satisfies the criteria for final approval under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

### 2.    Rule 23(e)(2)(A): Plaintiffs And Counsel Adequately Represented The Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. 2020)

(citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[1]

First, Plaintiffs' claims are typical of and coextensive with the Settlement Class's claims, and they have no antagonistic interests. Plaintiffs have suffered harm as a result of Defendants' allegedly wrongful conduct, as (1) they allege that they all suffered and seek to redress the same injury: the potential theft of their personal information in the Data Incident, and (2) their interest in obtaining the largest possible recovery is, therefore, aligned with other Settlement Class Members. *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member"); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) ("plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries—monetary losses resulting from GSE bond transactions").

Next, as the Court noted, Lead Counsel are highly experienced in complex class actions, and data breach litigation in particular. *See* Lead Counsel's resumes, Dkts. 77-4 (Glancy Prongay & Murray LLP), 78-1 (Bradly Grombacher LLP). This knowledge and experience enabled Lead Counsel to efficiently prosecute the case and negotiate a well-informed settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (proposed settlement enjoyed a "presumption of fairness" where class counsel were "extremely experienced

---

[1] *Accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

in class action litigation" and were involved in "similar litigation in other Courts" involving the same subject matter), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Due to their experience in litigating data breach cases and investigation of this case, Lead Counsel gained insight into the facts and legal issues necessary to make an informed judgment concerning settlement. Murray Decl. at ¶ 14. And while no formal discovery was conducted in this case, Lead Counsel have also taken discovery in numerous data breach cases, giving them insight into the types of evidence that would be available in this case. *Id. See In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."). Further, formal discovery is not required for a settlement to be adequate. *D'Amato*, 236 F.3d at 87 (finding "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011). ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating" (internal quotations omitted)). "In fact, informal discovery designed to develop a settlement's factual predicate is encouraged because it expedites the negotiation process and limits costs which could potentially reduce the value of the settlement." *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) ("In view of the way this speeds the negotiation process, informal 'discovery' is to be encouraged").

### 3.    Rule 23(e)(2)(B): The Settlement Is The Result Of Arm's-Length Negotiations

Another element of procedural fairness, as required by Rule 23(e)(2)(B), is that "the proposal was negotiated at arms'-length." As Lead Counsel has attested, *see* Murray Decl. at ¶ 8, the negotiations leading to the present Settlement arms'-length and involved the assistance of a mediator – in this case a respected former judge, the Hon. Morton Denlow. In conducting this analysis, courts recognize that a "mediator's involvement in . . . settlement negotiations helps to

13

ensure that the proceedings were free of collusion and undue pressure." *D'Amato*, 236 F.3d at 85; *see also Jones v. Singing River Health Servs. Found.,* 865 F.3d 285, 295 (5th Cir. 2017) ("The involvement of 'an experienced and well-known' mediator 'is also a strong indicator of procedural fairness.'" (*quoting Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012))); *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) (arms-length negotiations support approval, though they do not give rise to a *presumption* of fairness). Therefore, the nature of the Parties' negotiations leading to the proposed Settlement weighs in favor of approval.

    **4.**    **Rule 23(e)(2)(C): The Settlement Is An Excellent Result In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation**

Taking into account the relevant factors, and as described below, the Settlement offers adequate relief to the Settlement Class Members. The adequacy of the relief has now been confirmed by the Settlement Class Member's positive response to the Settlement, with no class members objecting, only two class members opting out, and many Class Members claiming benefits under its terms. This response is a "major indication of fairness." *Flores v. CGI Inc.*, 22-cv-350, 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022); *see also Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.").

Further, the Settlement terms are consistent with and similar to agreements in other similar data breach cases, in the Southern District of New York and across the country. *See, e.g.*, *Baksh et al. v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time; credit monitoring for claimants; and equitable relief in the form of data security enhancements) (notice attached as Ex. 1 to the Murray Declaration); *Rutledge et al v. Saint*

14

*Francis Healthcare System*, No. 1:20- cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and data security enhancements) (notice attached as Ex. 2 to the Murray Declaration).

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff(s)—or the class—could hope to obtain. *See Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. 153, 157 (E.D.N.Y. 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.,* 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

### a.  The Costs, Risks, And Delay Of Trial And Appeal[2]

In assessing the substantive adequacy of a proposed class settlement, Rule 23(e) requires a court to consider "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). As explained in Plaintiffs' Motion for Preliminary Approval, the Parties have been vigorously litigating this case, with Plaintiffs facing Defendants' motion to dismiss. It is evident that further

---

[2] Rule 23(e)(2)(C)(i) essentially incorporates six of the *Grinnell* factors: complexity, expense, and likely duration of the litigation (first factor); risks of establishing liability and damages (fourth and fifth factors); risks of maintaining class action status through trial (sixth factor); and range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also GSE Bonds,* 414 F. Supp. 3d at 693 ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

disputes lay ahead in this "inherently complex" class action, with risks to all parties. *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174.

This is especially true given that AudienceView continues to deny all liability or any wrongdoing. SA at Second Recital. And while Leads Counsel is experienced in data breach cases and the legal and factual issues that they present, it is still a relatively new and developing field of litigation, with particular uncertainty as it relates to class certification and trial. Jurisprudence on data breach claims "has developed significantly in the last twelve years." *Toretto v. Donnelley Fin. Solutions, Inc.*, 2022 WL 348412, at *12 (S.D.N.Y. Feb. 2, 2022). This evolution is certain to continue, with the Second Circuit having just recently provided guidance on the threshold Article III standing issues involved in data breach cases. *See McMorris v. Carlos Lopez & Assoc.*, 995 F.3d 295, 300 (2d Cir. 2021) (noting that it was addressing "whether a plaintiff may establish standing based on a risk of future identity theft or fraud" for the first time); *see also In re Equifax Inc. Customer Data Security Breach Litig.*, 2020 WL 256132, at *32 (N.D. Ga. Mar. 17, 2020) (noting that data breach plaintiffs' "path forward remained difficult," as "[t]he law in data breach litigation remains uncertain and the applicable legal principles have continued to evolve"), *aff'd in relevant part,* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (U.S. Jan. 10, 2022).

Moreover, due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach*

16

*Litig.*, 293 F.R.D. 21 (D. Me. 2013). Additionally, in this case, Defendants represented that they would seek to change the venue for this litigation from the United States to Canada, given that the company was headquartered there.

Finally, while Plaintiffs firmly believe in the merits of the case, litigating in such an evolving area of law involves significant risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id.*; *see also Velez v. Majik Cleaning Serv., Inc.,* 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation"). While Plaintiffs remain confident in the strength of their claims, additional litigation leaves open the risk that Plaintiffs will be unable to establish liability, prove causation and damages, and gain and maintain certification through trial. Thus, these factors weigh in favor of Settlement approval.

### b. The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class

Rule 23(e)(2)(C)(ii) requires a court to consider "the effectiveness" of the "proposed method of distributing relief to the class, including the method of processing class-member claims." The claims processing method "should deter or defeat unjustified claims" without being "unduly demanding." Advisory Committee Note to 2018 Amendment to Fed. R. Civ. P. 23. Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B); *GSE Bonds.*, 414 F. Supp. 3d

at 702 ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness.").

The Parties and EisnerAmper have faithfully implemented the claims procedures set forth in the Settlement Agreement. *See* Balhoff Decl. at ¶¶ 1-19. First, per the Court's Order, the Parties retained EisnerAmper, an experienced and competent claims administrator familiar with handling data breach settlements. *Id*. at ¶ 1. The Settlement Class Members were identifiable from AudienceView's records, and Notice of the proposed Settlement was directly mailed and or emailed to each uniquely identifiable individual, reaching over 13,000 individuals in the Settlement Class. *Id*. at ¶¶ 7-8. This Notice program was highly effective, with a 99.37% reach rate. *Id*. at ¶ 15.

Further, the Parties and EisnerAmper fully implemented the consumer-friendly process for submitting a Claim that was set forth in the Settlement Agreement. Claims could be submitted either by mail or via the Settlement Website. *Id*. at ¶¶ 11-12. And submitting claims was not overly burdensome. For example, Settlement Class Members could claim a payment for four hours of time without submitting any documentation. SA at ¶ 55.

### c.  The Terms Of The Proposed Award Of Attorney's Fees

A court must consider "the terms of any proposed award of attorney's fees, including timing of payment" in assessing the fairness and adequacy of a proposed settlement. Fed. R. Civ. P. 23(e)(2)(C)(iii). This fee provision is not tied to the approval of the Settlement. SA ¶¶ 93, 95; *see also* Murray Decl. at ¶ 10.

Pursuant to the terms of the Settlement and this Court's order, on December 30, 2024, Lead Counsel moved the Court for $130,500 in combined fees and expenses. Dkts. 75-78. As explained in their Memorandum of Law in Support of Motion for Attorneys' Fees, at 13 (Dkt. 76) Lead

Counsel have devoted more than 332 hours to litigating and resolving this action, resulting in a lodestar for their work of over $213,758. And Lead Counsel's lodestar has only increased since they filed their fee motion, as they have continued to expend hours in monitoring and reviewing claims data provided by EisnerAmper and in preparing this motion. This, along with an analysis of the factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) and described in Lead Counsel's fee motion, demonstrates the reasonableness of Lead Counsel's requested fees in this action.

Per the terms of the Settlement Agreement, Plaintiffs also moved this Court for a service award of $3,500 each for the two Class Representatives in recognition of their time, effort, and risk in prosecuting this case on behalf of the Settlement Class Members. SA at ¶ 91. As with the attorneys' fees and expenses, effectiveness of the Settlement is not tied to the Court's approval of this request. SA at ¶¶ 91-92.

### d.  Any Agreement Required To Be Identified Inder Rule 23(e)(3)

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then take into account any such agreements in assessing the relief provided in the settlement. See Fed. R. Civ. P. 23(e)(2)(iii), (3). There is no agreement between the parties, except as set forth in the Settlement Agreement. Murray Decl. at ¶ 11.

### 5.    The Settlement Treats Class Members Equitably Relative to Each Other

The proposed Agreement treats all Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members have had the same opportunity to file for reimbursement of out-of-pocket losses, attested time, or an alternative cash payment, which means that monetary compensation will be apportioned in accordance with each Settlement

Class Member's Claim. This factor therefore weighs in favor of approval of the proposed Settlement Agreement.

### 6.    The Ability of the Defendant to Withstand a Greater Judgment.

In assessing the fairness and adequacy of a proposed settlement, courts in this Circuit also assess a defendant's ability to withstand a greater judgment. *GSE Bonds*, 414 F. Supp. 3d at 696 (citing *Grinnell*, 495 F.2d at 463). While AudienceView may be able to withstand a greater judgment, this factor alone would not weigh against settlement. *See, e.g.*, *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) ("'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair'") *(quoting Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005). Even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Eastman Kodak Co.*, 228 F.R.D. at 186. Thus, this factor is neutral.

### 7.    Recovery Under the Settlement Is Within a Reasonable Range in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

Finally, courts in this Circuit consider two related factors: "the range of reasonableness of the settlement" in light of (1) "the best possible recovery" and (2) "all the attendant risks of litigation." *GSE Bonds Litig*., 414 F. Supp. 3d at 696. Assessing these factors requires taking into account "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Viafara*, 2014 WL 1777438, at *7 (citation and quotation marks omitted).

First, as to the best possible recovery available to Plaintiffs, "costs incurred to mitigate" the future risk of "identity theft or fraud" are potentially compensable damages in a data breach case. *See Toretto*, 2022 WL 348412, at *14. Here, the Settlement compensates Settlement Class Members through one of three methods of compensation: (1) out of pocket losses, (2) attested time

(for $75 per hour up to four hours, or $300); or (3) an alternative cash payment of $75, and up to a maximum of $225 if funds are available. Balhoff Decl. at ¶ 16.

Second, the Settlement provides prospective relief beyond what would be available through litigation, in the form of improvements to AudienceView's information security practices. *See, e.g.*, *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 202 (S.D.N.Y. 2012) (noting that neither "Best Practices" nor "injunctive relief that are designed to alter how Pinnacle deals with its tenants on a going-forward basis . . . would be available to Class Members in any context outside of the Settlement—whether if the Class were decertified and they were forced to start from scratch, or if the liability claims . . . went to trial."); *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 972, 974 n.6 (8th Cir. 2018) (in data breach case "the injunctive relief offered under the settlement" – which included defendant's commitment to implement "a number of data-security measures" – "has value to all class members"). In light of the uncertainties involved in litigating these still-novel claims, as well as the potential difficulties in maintaining class certification and proving damages, *see supra* Section III(B)(3)(i), the Settlement is well-within a reasonable range. *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020) (although "particularized evidence ha[d] not been adduced to support a 'best possible' judgment, the agreed-upon figure [was] reasonable in light of the substantial risks to recovery.").

* * *

Thus, analysis of Rule 23(e)(2)'s enumerated factors and the additional *Grinnell* factors considered by the Second Circuit demonstrate that the Settlement is fair, reasonable, and adequate. Further, the Settlement Class Members' favorable response to the Settlement—with no objections and only two opt-outs, and numerous claims for benefits—confirms its fairness and adequacy. The

Settlement Class's extremely positive reaction strongly supports final approval of the Settlement. *See, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."); *see also Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

### 2. The Court Should Certify the Settlement Class for Purposes of Judgment

As noted in the Preliminary Approval Order at ¶¶ 1-3, this Court has "certifie[d], solely for purposes of effectuating the proposed Settlement" the Settlement Class; (2) "provisionally finds, for settlement purposes only, that" the requirements of Rule 23 have been met, (3) "provisionally designate[s] and appoint[s] as the Class Representatives" the two lead plaintiffs. For the reasons set forth therein, as well as in Plaintiffs' Motion for Preliminary Approval, Plaintiffs' submit that the certification of the Settlement Class should be maintained.

**CONCLUSION**

For the reasons set forth set forth above, and as set forth in their Proposed Order, Plaintiffs request that the Court (1) grant final approval of the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); (2) maintain certification of the Settlement Class for purposes of judgment on the proposal; (3) as set forth in Plaintiffs' Fee brief, grant Plaintiffs' Counsel's requested fee award and reimbursement of expenses, as well as service awards for the two lead plaintiffs, and (4) enter final judgment after the Final Approval Hearing.

Dated: March 27, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: *Brian P. Murray*
Brian P. Murray (BM 9954)
230 Park Avenue, Suite 358
New York, New York 10169
Phone: (212) 682-5340
Email: bmurray@glancylaw.com

**BRADLEY GROMBACHER LLP**
Kiley Grombacher (pro hac vice)
31365 Oak Crest Drive, Suite 24
Westlake Village, California 91361
Phone: (866) 881-0403
Email: kgrombacher@bradleygrombacher.com

**Lead Counsel for the Plaintiff Class**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel for Plaintiffs certifies that this brief contains 6,724 words, which complies with the word limit of L.R. 7.1(c).

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On March 27, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 27, 2025, at Wilton, Connecticut.

*/s/ Brian P. Murray*
  Brian P. Murray